## Case No. 14,874.

### UNITED STATES v. COUCH.

[5 Hunt, Mer. Mag. 168.]

Circuit Court, S. D. New York. April Term. 1841.

INSOLVENCY—PROOF—CLAIMS OF UNITED STATES—SUIT TO ENFORCE PRIORITY—PARTIES.

[1. A bill by the United States to enforce a preference out of the estate of its insolvent debtor, who has made an assignment, cannot be maintained against one of its debtors, without making his assignee party.]

[2. The assignment of firm property and the property of one only of the partners does not establish insolvency of the firm, which will entitle the United States, a creditor of the firm, to maintain a bill to enforce the priority given it by Act March 2, 1799, § 65, in the estate of an insolvent debtor.]

[In equity. Suit by the United States against William Couch, survivor, etc., for an accounting in regard to certain property alleged to belong to a judgment debtor of the government, and to have such property ap-

1 [Reported by Hon. William Cranch, Chief Judge.]

plied to the payment of such judgment in preference to other creditors.]

The prayer of the bill demanded an account in respect to effects and moneys alleged to have belonged to the late firm of Castro & Henriquez, and that the right of the plaintiff thereto, in preference to others, might be decreed, and the amount applied on outstanding judgments and customhouse bonds in favor of the United States against Castro & Henriquez. The bill presented this state of facts: That Castro and Henriquez, prior to April, 1823, had been in partnership, carrying on the distillery business in this city; and, in connection with that business, imported merchandise, and became indebted to the United States on customhouse bonds to a large amount.˙ On the 20th April, 1823, the firm stopped payment, then being indebted to the United States on duty bonds for over $74,000. Henriquez was at that time in Europe. The business of the concern was managed by Castro, who also had a full power of attorney from Henriquez. On the day of their failure, or the day following, Castro made an assignment of the property of the firm and that of himself to Lewis A. Brunell, and immediately departed from New York, without the knowledge of his creditors. On the same day, proceedings were taken under the state act against Castro & Henriquez, as absconding or absent debtors, by the defendant Couch and his then partner, Stebbins, and others of their creditors. A few days thereafter, Castro returned to the city, and his assignment to Brunell being supposed imperfect, or insufficient in law, he resumed and cancelled it, and executed another, prepared under the advice of counsel, in which he assigned all the partnership estate, and all his individual estate, to Brunell, for the payment of the debts of the partnership, giving preference to. the debts due the United States. That prior to the failure, the firm had consigned to Stebbins & Couch large quantities of distilled spirits for sale, some of which had been sold on credit, and some remained unsold on the day of their failure, but has been since sold, and the proceeds realized, which are now held by the defendant Couch, survivor of Stebbins & Couch. That after the assignment, Brunell, the assignee, placed like property, belonging to Castro & Henriquez, in the hands of Stebbins & Couch, the avails of which defendant has received and yet retains; and, also, that Brunell carried on the distillery of Castro & Henriquez, with their stock assigned him, and consigned the liquors to Stebbins & Couch for sale, and that the proceeds of such sale are retained by the defendant. The bill also avers that judgments have been recovered by the United States on the customhouse bonds, and executions thereon have been returned unsatisfied, to the amount of $24,000, which Brunell is unable to satisfy; and it charges that the United States are entitled to have such proceeds (realized by Stebbins & Couch) applied to the satisfaction of the balance.

The bill was filed April, 1832. Couch filed his answer January, 1833. The cause was brought to hearing December, 1840.

Butler & Paine, for the United States.
D. Lord, Jr., for defendant.

Before THOMPSON, Circuit Justice, and BETTS, District Judge.

THE COURT remarked that there might be a serious difficulty, in the present posture of the case, in giving the plaintiff the relief sought, if the merits were beyond all question on that side. The action rests upon the authority of U. S. v. Howland, 4 Wheat. [17 U. S.] 108, and in its institution conformed to that precedent; but has since varied from it, by discharging the assignee from the suit. That the original debtors (Castro & Henriquez), or their assignee, seemed to be indispensable parties to a bill of this description, not only for the purpose of discharging the debtor from his liabilities to those from whom he received the funds, and to authorize the institution of a new cestui que trust in their place; but, also, because an accounting is called for, and the equity of the United States can only intercept what is ·due the party directly responsible to them, on a just amount taken between such party and his debtor. The assignee ought, therefore, to have been retained a party to the taking of such account, to enable the court to decree definitely upon the rights of all interested in the subject-matter. This formal difficulty might be obviated if the case, as now disclosed, established any right in the United States upon the merits, unless the staleness of the claim and the extraordinary delays in prosecuting it should be regarded as outweighing any equity on the part of. the United States to amend the proceedings. The unvaried construction of the 65th section of the act of March 2, 1799, settles this point, that the priority therein given the United States, to be paid out of the estate of an insolvent debtor, takes effect only when the insolvency is established by an assignment of all his property, either by his own act, or by act of law, and when such assignment is carried into execution by the assignee. [U. S. v. Howland] 4 Wheat. [17 U. S.] 108; [Conard v. Atlantic Ins. Co.] 1 Pet. [26 U. S.] 386; [Brent v. Bank of Washington] 10 Pet. [35 U. S.] 597; [Beaston v. Farmers' Bank of Delaware] 12 Pet. [37 U. S.] 102; [U. S. v. Hove] 3 Cranch [7 U. S.] 73; [Prince v. Bartlett] 8 Cranch [12 U. S.] 431; U. S. v. Mott [Case No. 15,826]; U. S. v. Clark [Id. 14,807]. The evidence on the part of the plaintiff is very faint upon this head, and it is in no respect aided by the answer. There is ground for implication that Brunell took control of the partnership effects as assignee, yet the evidence equally comports with his having acted merely as factor or agent, and it is not a little remarkable that no trace of the assignment among his papers,

or proof of his claim under it, could be produced, if that was the only foundation of his powers in respect to the estate and interests of Castro & Henriquez.

But independent of all questions upon the effect of this evidence, the assignment fails to establish the insolvency of the partners, because the individual property of Henriquez was not included in it. As the insolvency of one partner, or the insufficiency of their joint means to pay the partnership debts, does not necessarily prove the insolvency of the other partner, it is clear that the assignment made by Castro does not secure an entire preference or priority to the United States. The rights of the creditors of Henriquez, at least, are not displaced by it. [U. S. v. Hack] 8 Pet. [33 U. S.] 271. This is independent of the doubt that might be raised as to the sufficiency of Castro's assignment of even partnership effects, to supply proof of the insolvency of the firm. Pearpoint v. Graham [Case No. 10,877].

THE COURT further observed that, as it appeared from the answer and proofs, the attachment sued out of the state court was carried no further than the arrest of partnership property, and was discontinued within a few days, without the appointment of trustees, or any order of assignment. This initiatory arrest of property, and holding it in custody of the law to abide the decision of the proper forum, whether it shall pass to assignees, is not the proof of insolvency contemplated by the act of congress. For although it is declared that cases of insolvency mentioned therein shall be deemed to extend to cases in which the estate and effects of an absconding, concealed, or absent debtor shall have been attached by process of law (Act March 2, 1799, § 65), yet manifestly the term "attached" must be understood as having relation to the ultimate disposition of the property, and not its simple seizure; because that is often divested immediately, for the want of due grounds for the procedure; but, more especially, because the priority of the United States arises and is enforced, not that the property of their debtor has been taken from his possession, but for the reason that it is invested in some other party (assignee or executor) who has power to distribute and dispose of it. [Beaston v. Farmers' Bank], 12 Pet. [37 U. S.] 136, 137; [Conard v. Atlantic Ins. Co.] 1 Pet. [26 U. S.] 386. The sheriff becomes no such party by serving a process of attachment. He could not be made amenable to the United States, either by means of his possession of the property, or because he had surrendered it to the owner, or transferred it to the assignees. When the property is placed, by means of the attachment, in a situation to be distributed, the priority of the United States comes into existence, and then only, for the act renders the assignee paying any debt previous to those due to the United States answerable in his own person and estate for such debts (section 65); and this liability necessarily imports that the party charged with it had full dominion over the estate and effects of the insolvent, because he is regarded as having committed a devastavit, or misapplied funds, by paying them out in disregard of legal priorities, and not as a debtor to the United States, or subject to their action merely, by having the estate in his possession. The court accordingly ruled that neither the assignment made by Castro, nor the attachment levied on the property of the firm, proved the insolvency of Castro & Henriquez so as to enable the United States to sustain this action. It was therefore ordered that the bill be dismissed.